David S. Levin (CA Bar No. 156336)
LEVIN LAW FIRM
405 Sherman Ave
Palo Alto, CA 94306-1827
Telephone:  (650) 858-8500
david@levinlawfirm.com

Attorneys for Plaintiff,
Burning Man Project

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BURNING MAN PROJECT,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES DEPT. OF THE INTERIOR<br>BUREAU OF LAND MANAGEMENT,<br>NEVADA STATE OFFICE; and,<br><br>HOLLY J. VINALL, in her official capacity as<br>Deputy State Director,<br><br>                    Defendants. | Case No.<br><br>**Complaint** |

Plaintiff, Burning Man Project ("Burning Man" or "Plaintiff") files this Complaint against the United States Department of the Interior Bureau of Land Management, Nevada State Office ("BLM"), and Deputy State Director, Holly J. Vinall ("Vinall") (collectively, "Defendants") and alleges the following.

## NATURE OF ACTION

1.      This action arises from the recent decision of BLM, an agency of the United States Department of the Interior, and Vinall, a BLM official, to disclose certain confidential

commercial or financial information submitted by Burning Man, copies of which now reside within the files of BLM as government records.  Attached to the Complaint as **Exhibit A** is a true and correct copy of BLM's March 30, 2020 decision ("Decision") to disclose such information in response to a request made under the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA").

2.      BLM's Decision violates the federal Administrative Procedure Act ("APA"), and Burning Man seeks to prevent the public disclosure of its confidential commercial or financial information on two alternative bases.  First, the information BLM seeks to release falls within the scope of FOIA Exemption 4 (5 U.S.C. § 552(b)(4)), and BLM is not authorized by law to release such information.  Second, the information BLM seeks to release is a trade secret within the meaning of the Trade Secrets Act (18 U.S.C. §1905), and BLM is prohibited by law from releasing such information.

3.      For these reasons, BLM's Decision is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  The Decision is also arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Therefore, Burning Man respectfully request that this Court hold BLM's Decision to be unlawful, and accordingly set it aside.  Furthermore, Burning Man respectfully requests that this Court permanently enjoin Defendants from releasing certain records as described below.

**PARTIES**

4.      Burning Man is California nonprofit public benefit corporation, qualified as a 501(c)(3) tax-exempt public charity, with headquarters located at 660 Alabama Street 4th Floor, San Francisco, California 94110.  Burning Man endeavors to bring experiences to people in grand, awe-inspiring and joyful ways that lift the human spirit, address social problems and inspire a sense of culture, community and civic engagement.  In furtherance of this vision and its nonprofit mission, Burning Man produces, among other projects, the annual arts and culture event known as Burning Man (the "Event") in the Black Rock Desert of Northwestern Nevada.

5.      Defendant BLM is an agency of the United States Department of the Interior. *See* 5 U.S.C. § 701(b)(1).  BLM's Nevada State Office is located at 1340 Financial Boulevard, Reno, Nevada 89502.  BLM maintains a Northern California District Office located at 6640 Lockheed Drive, Redding, California 96002.   BLM administers the public lands of the United States including the Black Rock Desert—High Rock Canyon Emigrant Trails National Conservation Area in Northwestern Nevada ("Black Rock NCA").  The Burning Man Event takes place in the Black Rock NCA under a Special Recreation Permit administered by BLM.

6.      Plaintiff is informed and believes that Defendant Holly J. Vinall is BLM's Nevada Deputy State Director.  Defendant Vinall is sued in her official capacity.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, including the Administrative Procedure Act, FOIA, and the Trade Secrets Act.

8.      The Decision is a final agency action.  Judicial review of a final agency action is authorized pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706.  For purposes of the Administrative Procedure Act, Burning Man is a "person" entitled to seek review thereunder. *See* 5 U.S.C. § 551(2).  Burning Man also invokes this Court's authority to issue injunctive relief under Federal Rule of Civil Procedure 65.

9.      Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(e).

**FACTUAL ALLEGATIONS**

**Overview of the Burning Man Event**

10.      Burning Man's Event attracts more than 70,000 individuals from all over the world.  Over the course of eight days, Event participants create Black Rock City, a unique experimental community.  Each year since 1990 (except for 1997, when the Event was held on private land), the Event has taken place on the public lands located in what is now the Black Rock NCA in northern Nevada.

11.     The Event, and its ethos and culture, are rooted in the Ten Principles of Burning Man: Radical Inclusion, Gifting, Decommodification, Radical Self-reliance, Radical Self-expression, Communal Effort, Civic Responsibility, Leaving No Trace, Participation, and Immediacy.  These Principles are central to the participants' experience at the Event, and they are also reflected in the Event's commitment to and record of health, safety, and environmental stewardship.

12.     Event operations are organized into and implemented by over fifty year-round departments and teams dedicated to ensuring the Event is run in a manner that promotes public health and safety for all persons on location. Burning Man engages thousands of competent and highly trained health and safety employees, contractors, and volunteers, many of whom have supported the Event for a decade or more in their respective fields of expertise.  These health and safety personnel include the Black Rock Rangers, an internal department tasked to help ensure the safety of all participants by, among other activities, providing security at the perimeter of scheduled artwork burns and engaging in 24-hour patrols on foot and bicycle for the duration of the Event. Burning Man's Emergency Services Department deploys hundreds of licensed, professional personnel who staff multiple first-aid stations and provide triage to the Nevada-licensed emergency care facility onsite.  Burning Man also ensures the availability of ground and air ambulance services and a dedicated runway for nighttime medivac needs. Hundreds of traffic management staff provide management and security at the entrance gates, airport, and perimeter of the Event, utilizing state-of-the-art means and methods. Burning Man also engages over six hundred trained employees, contractors, and volunteers to safely construct and manage the Event's infrastructure, and several hundred more to ensure environmental compliance and to provide Event-related communications and information to participants.

13.     Over the nearly 30 years Burning Man and its predecessor organizations have produced the Event in the Black Rock NCA, they developed multiple unique and proprietary operating and reporting documents used to produce the Event, documents Burning Man maintains to this day.  One such document is a Daily Situation and Status Report ("Sit Stat Report").   Burning Man developed its Sit Stat Report to capture and communicate current

operational details about the Event among Burning Man managers and a few government bodies. Sit Stat Reports organize key data points related to Burning Man's Event production, like population size, medical services, public safety and law enforcement incidents. Sit Stat Reports reflect years of business practices, methodologies, innovations and improvements that Burning Man has synthesized into a single daily report. The Sit Stat Reports contain data and processes that are commercially unique and valuable. Burning Man restricts public access to the Sit Stat Reports and only shares them with BLM and local county law enforcement, designating the Reports as Confidential Information under FOIA.

**Burning Man's Special Recreation Permit**

14.     Pursuant to the requirements of the Federal Land Policy and Management Act, 43 U.S.C. §§ 1301 *et seq.* ("FLPMA") and the Federal Lands Recreation Enhancement Act, 16 U.S.C. §§ 6801 *et seq.* ("FLREA"), Burning Man must apply to BLM for a Special Recreation Permit ("SRP") to allow the Event to take place on the public lands within the Black Rock NCA. For the 2019 Event, BLM granted Burning Man an SRP numbered LLNVW03500-19-012930 (NV030.10) ("2019 SRP").

15.     BLM charges Burning Man annually for its costs to administer the Burning Man SRP pursuant to FLPMA, FLREA, and the SRP Regulations, 43 C.F.R. Part 2930 *et seq.* Under this cost recovery scheme, BLM charges Burning Man for all of BLM's direct and indirect costs to administer the annual Burning Man SRP.

16.     In addition to recovering all of its permit administration costs from Burning Man through cost recovery, BLM charges Burning Man a separate commercial use fee ("Commercial Use Fee"). *See* BLM's H-2930-1, BLM Recreation Permit and Fee Administration Handbook, Rel. 2-300 dated November 17, 2014. According to BLM's Handbook at 1-23, "The minimum annual fee for any commercial SRP is established by the BLM Director and is [$110 as of November 20, 2017]. All commercial permittees must pay the minimum annual fee or 3 percent of their adjusted gross receipts, <u>whichever is greater</u>." (Emphasis added.) Since Burning Man's

gross receipts always exceed $110, Burning Man pays BLM an annual Commercial Use Fee equal to 3 percent of all gross revenue Burning Man collects related to the Event.

17.     To calculate Burning Man's annual Commercial Use Fee, BLM requires Burning Man to generate a report that includes all Event-related gross revenue after each Event ("Gross Revenue Report").     As a condition for granting Burning Man's 2019 SRP, BLM required Burning Man to agree to Additional Stipulation No. 35, which mandated:

> BMP shall provide BLM with an itemized detailed gross revenue report, prepared by a Certified Public Account, including, but is not limited to, ticket sales, authorized contractors operating under the Burning Man SRP, coffee and ice sales, revenue from filming and photography, fees associated with outside service providers and private donations received by BMP for management of the event on public lands.

Also, BLM required Burning Man to agree to Additional Stipulation No. 36, which mandated:

> BMP shall provide BLM with an itemized gross revenue report for all ticket sales and event entry sales.  The report will include the number of tickets sold in each category and their price per ticket for the following categories as listed in the BMP "2019 Ticket Structure."

Thus, BLM required Burning Man to prepare and submit to BLM an annual Gross Revenue Report detailing every dollar collected according to each revenue source.  Moreover, BLM required that Burning Man disclose to BLM its entire ticket pricing structure and the number of tickets sold within each ticket category.  As detailed below, this revenue and pricing data constitutes Burning Man's confidential financial information, and Burning Man does not disclose this confidential information to any public or private entity except BLM under the protections of FOIA Exemption 4.  5 U.S.C. § 552(b)(4).  The report is prominently marked, "Confidential Commercial/Financial Information for Permit Acquisition Use Only – Not for Distribution Outside of BLM."

**February 1, 2020 FOIA Request from David Skelton**

18.     Around March 4, 2020, Defendant Vinall provided Burning Man with notice that an individual named David Skelton ("Skelton") had submitted a FOIA request to BLM dated February 1, 2020, and seeking documents related to the 2019 Event.  A true and correct copy of

Defendant Vinall's notice is attached as **Exhibit B** to the Complaint. BLM assigned Skelton's FOIA Request the control number 2020-00349 ("Skelton FOIA Request").

19.     Skelton is a serial FOIA requester and has made numerous FOIA requests about Burning Man Events to BLM over the years. Burning Man is informed and believes that Skelton is the agent of Pershing County's Sheriff, Jerry Allen. Since he became the sheriff of the county in which the Event takes place, a few months prior to the 2015 Event, Allen has publicly and privately criticized Burning Man regarding a number of purported concerns, including the amount of funding Burning Man provides to Pershing County.

20.     In her notice of March 4, 2020, Vinall informed Burning Man that BLM had identified a raft of documents that BLM believed were responsive to the Skelton FOIA Request. Included within BLM's identified responsive documents were two categories of records containing Burning Man confidential commercial or financial information:

> ➢ 02022020_Burning Man Gross Revenue Report (2 pages); and

> ➢ SIT STAT Reports (folder containing 13 Sit Stat Reports, 2 pagers per Report)

Collectively, the Gross Revenue Report and the 13 Sit Stat Reports shall be referred to herein as the "Subject Records."

**Burning Man's Objection to Disclosure of the Subject Records**

21.     On March 16, 2020, Burning Man timely objected to BLM's disclosure of the Subject Records ("Objection"). A true and correct copy of Burning Man's Objection is attached as **Exhibit C** to the Complaint.

22.     In its Objection, Burning Man provided BLM with a "detailed written statement," pursuant to 43 CFR § 2.23(e), supporting Burning Man's contention that the Subject Records contain confidential commercial or financial information that is exempt from public disclosure according to 5 U.S.C. § 552(b)(4) ("FOIA Exemption 4"). Burning Man explained that the Subject Records satisfied each element of FOIA Exemption 4 according to the recent Supreme

1   Court decision, *Food Marketing Institute v. Argus Leader Media*, 588 U.S. ___, 139 S.Ct. 2356

2   (2019).

3         23.     Specifically, the Subject Records contain commercial or financial information.

4   As explained in Paragraph 17, *infra*., the Gross Revenue Report summarizes all 2019 Event-

5   related revenue collected by Burning Man, which is archetypal financial information.   As

6   explained in Paragraph 13, *infra*., the Sit Stat Reports are unique and proprietary commercial

7   records that Burning Man developed over years of producing Events.  Sit Stat Reports capture

8   and communicate daily operational details about the Event to Burning Man managers and two

9   government agencies with jurisdiction over the public lands where the Event takes place:  BLM

10  and the Pershing County Sheriff's Office.   The operational details and data points captured in

11  each Sit Stat Report are commercial information about the core of Burning Man's Event

12  production business.

13        24.     The commercial or financial information in the Subject Records is private and

14  confidential.  Burning Man certified that it does not disclose the Subject Records, or information

15  contained therein, to the public.  *See* **Exhibit C** at 2.  Burning Man's Gross Revenue Report in

16  particular contains a summary of Burning Man's most sensitive financial information.   The

17  Gross Revenue Report not only lists Burning Man's annual Event-related revenue, but it divides

18  the revenue into categories of corresponding revenue sources.  The "Ticket Revenue" category

19  is even more granular: All of Burning Man's ticket revenue is divided into sub-categories

20  according to ticket type and price.  Public disclosure of the Revenue Report would reveal how

21  many tickets Burning Man sold across each price category.  Thus, public disclosure of the

22  Revenue Report is tantamount to public disclosure of Burning Man's entire pricing structure,

23  which is one of Burning Man's most sensitive and private business details.  As explained in

24  Paragraphs 16 and 17, *infra,* Burning Man is required to prepare and submit the Gross Revenue

25  Report to BLM as a condition of receiving the Event SRP and in connection with the calculation

26  of Burning Man's Commercial Use Fee.   As explained in **Exhibit C,** BLM is the only

27  government agency (federal, state, or local) that receives Burning Man's Gross Revenue Report,

28  and Burning Man restricts internal access to the Gross Revenue and Sit Stat Reports to its senior

management and professional staff.  Thus, Burning Man takes active steps to ensure that the Subject Records and underlying information remain private.

25.    Finally, Burning Man produced the Subject Records under BLM's assurance that the agency would keep the Subject Records confidential.  An agency's assurance of continued confidential treatment of submitted information can be implied or inferred based on the circumstances.  *Food Marketing Institute*, 139 S.Ct. at 2363 ("Exemption 4 would protect information that a private individual wishes to keep confidential for his own purposes, but reveals to the government under the express or implied promise of confidentiality") (emphasis added).  Burning Man took affirmative steps to confirm that the Subject Records would be kept private.   Both the Revenue Report and Sit Stat Reports contain a prominent, restrictive confidentiality legend as follow:

*Confidential Commercial/Financial Information for Permit Acquisition Use Only*
*Not for Distribution Outside of BLM*
*FOIA Exemption No. 4; 5 U.S.C. § 552(b)(4) and 43 CFR § 2.23(a)(1)*

BLM received the Records with this restrictive legend and never informed Burning Man that the agency would ignore the confidentiality restriction. By accepting the Subject Records with a restrictive legend, including an express direction that the record was "Not for Distribution Outside BLM," BLM gave Burning Man an assurance that the subject records would be kept private. At a minimum, BLM's acceptance of sensitive commercial and financial reports marked "Confidential" and not for public distribution gave Burning Man at least an implied assurance that BLM would maintain the confidentiality of the Records and the application of FOIA Exemption 4.  Based on the totality of circumstances, Burning Man reasonably inferred from BLM's conduct that it would maintain the confidentiality of the Subject Records.  Thus, the overall "circumstances" under which Burning Man submitted the Subject Records constituted BLM's assurance that it would not produce the Subject Records to the public under a FOIA request.

26.     Defendants BLM and Vinall rejected Burning Man's Objection and stated their intention to release the Subject Records to the public.  *See* **Exhibit A**.  Despite Burning Man's "detailed written statement" and analysis of why FOIA Exemption 4 squarely applied to the Subject Records, Defendant Vinall provided a one-sentence response to Burning Man's Objection:  "[The Subject Records] do[] not contain Commercial or Financial information nor is that information considered confidential, specifically the incidents and population information is typically released and has been made available to the public in previous years." *See* **Exhibit A**.  BLM's response contained no facts or factually supported analysis rebutting or addressing the detailed factual and legal analyses contained in Burning Man's Objection.  Thus, BLM failed to make the legal or factual determinations required by FOIA Exemption 4 prior to the contemplated release.

27.     Burning Man files this action to seek relief from BLM's arbitrary and capricious Decision to release the Subject Records contrary to applicable law.

**FIRST CAUSE OF ACTION**
**Violation of the Administrative Procedure Act**
**(Defendants' Intended Release Exceeds Statutory Authority Under FOIA)**

28.     Burning Man incorporates by reference the allegations and averments contained in Paragraphs 1 - 27, *infra*., as if fully set forth herein.

29.     BLM's Decision is a final agency action within the meaning of 5 U.S.C. § 704, and it is therefore a reviewable action as defined by the Administrative Procedure Act.  In its attempt to protect the confidential commercial or financial information sought by the Skelton FOIA Request, Burning Man has exhausted all the available administrative remedies provided by BLM.

30.     Burning Man will suffer irreparable harm if BLM releases the Subject Records, and the confidential financial or commercial information therein, to the public and the information thereby becomes available to commercial competitors.

31.     FOIA authorizes agencies to disclose certain information upon a request for records.     FOIA Exemption 4, however, exempts confidential commercial or financial information from the statute's applicability.

32.     The Subject Records that BLM and Vinall intend to release pursuant to the Skelton FOIA Request contain Burning Man's confidential and non-public commercial or financial information, which BLM agreed to withhold from public disclosure and which is exempt from the application of FOIA.  Therefore, BLM and Vinall are not authorized by FOIA to disclose the requested information.

33.     The Decision of BLM and Vinall is unlawful because it is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right within the meaning of 5 U.S.C. § 706(2)(C).  It is also unlawful because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A).  Accordingly, this Court should set aside the Decision and permanently enjoin Defendants from releasing the Subject Records sought by the Skelton FOIA Request.

**SECOND CAUSE OF ACTION**
**Violation of the Administrative Procedure Act**
**(Defendants' Intended Release Violates the Trade Secrets Act)**

34.     Burning Man incorporates by reference the allegations and averments contained in Paragraphs 1 - 33, *infra*., as if fully set forth herein.

35.     BLM's Decision is a final agency action within the meaning of 5 U.S.C. § 704, and it is therefore a reviewable action as defined by the Administrative Procedure Act.  In its attempt to protect the information sought by the Skelton FOIA Request, Burning Man has exhausted all the available administrative remedies provided by BLM

36.     The Subject Records that BLM and Vinall intend to release pursuant to the Skelton FOIA Request contain Burning Man's trade secrets within the meaning of the Trade Secrets Act, 18 U.S.C. §1905.

37.     Burning Man will suffer irreparable harm if BLM releases the Subject Records, and the confidential financial or commercial information therein, to the public and the information thereby becomes available to commercial competitors.

38.     The Trade Secrets Act provides, among other things, that any government officer or employee who publishes, discloses, or makes known in any manner, or to any extent not authorized by law, any information received in the course of employment that relates to trade secrets, confidential statistical data, or amounts of any income, profits, or losses shall be fined or imprisoned, and shall be removed from office or employment.  *See* 18 U.S.C. § 1905. Furthermore, when confidential commercial or financial information falls within FOIA Exemption 4, the government is precluded from releasing it by the Trade Secrets Act.

39.     BLM's Decision states that BLM and Vinall intend to release the Subject Records that contain trade secret information on or after April 13, 2020.  This release of trade secret information will violate the Trade Secrets Act.

40.     The Decision of BLM and Vinall is unlawful because it is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right within the meaning of 5 U.S.C. § 706(2)(C).  It is also unlawful because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A).  Accordingly, this Court should set aside the Decision and permanently enjoin Defendants from releasing the Subject Records sought by the Skelton FOIA Request.

**RELIEF REQUESTED**

**WHEREFORE**, Burning Man respectfully requests the following relief:

A.     That this Court enter judgment holding unlawful and setting aside the Decision of BLM and Vinall to release the Subject Records sought by the Skelton FOIA Request as being in excess of Defendants' statutory authority; without observance of procedures required by law; otherwise contrary to law; and arbitrary, capricious, and an abuse of discretion;

B.     That this Court permanently enjoin BLM and Vinall from releasing or disclosing the Subject Records, or any portion thereof, in response to the Skelton FOIA Request or otherwise;

C.     That this Court award Burning Man its costs and reasonable attorney's fees; and,

D.     That this Court grant Burning Man such other and further relief, legal or equitable, which this Court deems just and proper.

DATED:  April 12, 2020                    LEVIN LAW FIRM


By:   /s/ David S. Levin
      David S. Levin
      Attorneys for Plaintiff,
      Burning Man Project

COMPLAINT